IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| J. DENNIS STACEY and PELHAM L. JACKSON,<br><br>      Plaintiffs,<br><br>vs.<br><br>S.M.R. JEWELL, in her capacity as SECRETARY OF THE INTERIOR; BUREAU OF LAND MANAGEMENT; and INTERIOR BOARD OF LAND APPEALS,<br><br>      Defendants. | Case No. 3:13-cv-00113-RRB<br><br>**MEMORANDUM DECISION** |

Plaintiffs J. Dennis Stacey and Pelham L. Jackson ("Plaintiffs") appeal from the decision of the Secretary of the Interior ("Secretary") holding that stone known as "Spencer Stone" or "PR 16 graywacke" was not a locatable mineral under 30 U.S.C. §§ 21 – 54 (the "Mining Law").[1] The matter has been fully briefed by the parties and the Court has determined that oral argument would not materially assist in reaching a decision in this matter. Accordingly, the request for oral argument at **Docket 60** is **DENIED**, and the matter is submitted for decision on the briefs.[2]

---

[1] *United States v. J. Dennis Stacey and Pelham L. Jackson*, 171 IBLA 170 (2007).

[2] D.Ak. LR 7.2(a)(3)[B].

## I.    BACKGROUND

The history and background of this action are well known to the parties and are recited herein only to the extent necessary to an understanding of this decision.

This action arises out of a contest proceeding initiated by the Bureau of Land Management ("BLM") contesting the validity of ten placer mining claims Plaintiffs had located in the Chugach National Forest.  While the validity of nine of the claims was upheld, the Administrative Law Judge ("ALJ") held that PR 16 graywacke was a common variety building stone not locatable under the mining laws.  On administrative appeal  the Interior Board of Land Appeals ("IBLA") affirmed the decision of the ALJ.  Plaintiffs challenge the holding that Spencer Stone is a common variety stone in this action.

## II.    JURISDICTION/STANDARD OF REVIEW

This Court has jurisdiction over appeals from the final decisions of the Secretary of the Interior.[3]  The decision of the IBLA is the final decision of the Secretary for purposes of judicial review.[4]

Under the Administrative Procedure Act ("APA"), this Court must "hold unlawful and set aside agency action, findings, and conclusions of law found to be . . . arbitrary, capricious, or otherwise not in accordance with law."[5]  The scope of review under the arbitrary and capricious standard is narrow and "a court does not substitute its judgment

---

[3] *Doria Min. & Engineering Corp. v. Morton*, 608 F.2d 1255, 1257 (9th Cir. 1979).

[4] 43 C.F.R. §§ 4.1(b)(2), 4.403(a).

[5] 5 U.S.C. § 706(2)(A).

for that of the agency."[6]  This standard requires "a rational connection between facts found and conclusions made" by the Secretary.[7]

[. . . .] Section 706(2) of the APA provides that an agency action must be upheld on review unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  As a reviewing court, we "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed.2d 136 (1971), *abrogated in part on other grounds as recognized in Califano v. Sanders,* 430 U.S. 99, 105, 97 S. Ct. 980, 51 L. Ed.2d 192 (1977).  Although our inquiry must be thorough, the standard of review is highly deferential; the agency's decision is "entitled to a presumption of regularity," and we may not substitute our judgment for that of the agency. *Id.* at 415–16, 91 S. Ct. 814.  Where the agency has relied on "relevant evidence [such that] a reasonable mind might accept as adequate to support a conclusion," its decision is supported by "substantial evidence." *Bear Lake Watch, Inc. v. FERC,* 324 F.3d 1071, 1076 (9th Cir.2003).  Even "[i]f the evidence is susceptible of more than one rational interpretation, [the court] must uphold [the agency's] findings." *Id.*[8]

In the interim between time that Plaintiffs filed their application and her final decision, the Secretary adopted 43 C.F.R. § 3830.12(b) codifying the Ninth Circuit decision in *McClarty*.[9]  This Court has determined that § 3830.12(b) applies to this case.[10]  Thus,

---

[6] *Judulang v. Holder,* 132 S. Ct. 476, 483 (2011); *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011).

[7] *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 760 (9th Cir. 2014) (citation and internal quotation marks omitted).

[8] *San Luis & Delta-Mendoza Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014).

[9] *McClarty v. Sec'y of Interior*, 408 F.2 907 (9th Cir. 1969). In expressly adopting the *McClarty* standard in the final rule, the BLM indicated it "modified the language in some sections from the proposed rule so that they more closely match the language and intent of applicable case law. For example, to define uncommon varieties of mineral materials, (continued...)

in resolving this appeal the Court must decide whether the Secretary's decision meets the

parameters of § 3830.12(b), which provides:

> (b) Under the Surface Resources Act, certain varieties of mineral materials
> are locatable if they are uncommon because they possess a distinct and
> special value. As provided in McClarty v. Secretary of the Interior, 408 F.2d
> 907 (9th Cir. 1969), we determine whether mineral materials have a distinct
> and special value by:
>
>     (1) Comparing the mineral deposit in question with other deposits of
> such minerals generally;
>     (2) Determining whether the mineral deposit in question has a unique
> physical property;
>     (3) Determining whether the unique property gives the deposit a
> distinct and special value;
>     (4) Determining whether, if the special value is for uses to which
> ordinary varieties of the mineral are put, the deposit has some distinct and
> special value for such use; and
>     (5) Determining whether the distinct and special value is reflected by
> the higher price that the material commands in the market place.

With respect to the interpretation and application of agency regulations, the Ninth

Circuit stated:

> "When Congress has 'explicitly left a gap for an agency to fill, there is
> an express delegation of authority to the agency to elucidate a specific
> provision of the statute by regulation,' and any ensuing regulation is binding
> in the courts unless procedurally defective, arbitrary or capricious in
> substance, or manifestly contrary to the statute." *United States v. Mead
> Corp.,* 533 U.S. 218, 227, 121 S.t. 2164, 150 L.d.2d 292 (2001) (quoting
> *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837,
> 843–44, 104 S.t. 2778, 81 L.d.2d 694 (1984)).  Even if the agency has not
> formally interpreted the statute, *Chevron* deference applies when it has
> "promulgated a rule based on an implicit interpretation of the statute."

---

[9] (...continued)
we rely on the court's decision in *McClarty.*"  68 Fed. Reg. 61046, 61048 (Oct. 2, 2003).

[10]    Docket 81.  This Court also notes that throughout their appeal to the IBLA
Plaintiffs argument focused on their interpretation of § 3830.12(b) and its application to
their case.

*Schleining v. Thomas,* 642 F.3d 1242, 1246 (9th Cir.2011). An agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.t. 905, 137 L.d.2d 79 (1997) (internal quotation marks omitted).[11]

While the government has the burden of proof to establish a prima facie case, once the government has met its burden, the burden of proof by a preponderance of the evidence shifts to the claimant. While the claimant does not have to establish all the elements necessary, it must preponderate on the issues raised.[12] This Court must apply these principles to the case before it.

## III. ISSUES PRESENTED/RELIEF REQUESTED

Plaintiffs present several issues and subissues in somewhat of a "shotgun" manner.

1. The government did not sustain its prima facie case.

2. The Secretary improperly compared Spencer Stone to other deposits of armor stone.

3. The assumption that the Spencer Stone produced by Plaintiffs had unique qualities was not rebutted by substantial evidence.

4. The Secretary failed to make any finding disputing the distinct and special value for Spencer Stone.

5. The Secretary erred in finding that Spencer Stone does not have a distinct and special value in the market.

───────────────

[11] *Natural Res. Def. Council, Inc. v. U.S. Dep't of Transp.*, 770 F.3d 1260, 1263–64 (9th Cir. 2014).

[12] *Hjelvik v. Babbitt*, 109 F.3d 1072, 1075 (9th Cir. 1999).

6.     Supplementation of the record to include certain documents developed by the Department of Agriculture, U.S. Forest Service, related to the management of the Spencer Glacier materials.

Plaintiffs request that the decision of the Secretary be reversed with instructions that the contest complaint be dismissed.[13]

## IV.    DISCUSSION

### A.    *Supplementation of the Record*.

Plaintiffs seek to supplement the record to include the "Stacey Exhibits,"[14] and the Declaration of Pelham L. Jackson.[15]  The Secretary has accepted augmentation of the record to include the Declaration of J. P. Tangen and the accompanying exhibits.[16]  The record is supplemented to include those documents.

The "Stacey Exhibits" consist of the following documents issued by the U.S. Forest Service:  (1) An issue paper entitled "Spencer Glacier Mineral Materials Management" (March 2008);[17] (2) an issue paper entitle "Spencer Glacier Mineral Materials Management"

---

[13] Although Plaintiffs also presented an argument before the Secretary that Spencer Stone had a distinct and unique quality used a decorative stone, Plaintiffs do not advance that argument in their opening brief.  Consequently, the Court assumes that Plaintiffs have abandoned that argument.  *See United States v. Karma*, 394 F.3d 1236, 1238 (9th Cir. 2007) (holding that an issue is waived if it is not specifically and distinctly argued in an appellant's opening brief); *see also Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal. arguments not raised by a party in its opening brief are deemed waived.").

[14] Declaration of J. Dennis Stacy, Exhibits E through I, Dockets 23-1 through 23-5.

[15] Docket 37-1.

[16] Docket 22.

[17] Docket 23-1.

(July 2010);[18] (3) Draft Environmental Impact Statement Spencer Mineral Materials Project (April 2008);[19] Spencer Glacier Mineral Material and Recreation Withdrawal Proposal and Application Environmental Assessment (March 2009);[20] and a comparison analysis of the Forest Service documents to the decision of the Secretary in this case prepared by J. Dennis Stacey.[21]

It is undisputed that the supplemental materials Plaintiffs seek to have considered post-date the decision at issue in this case. It is also indisputable that the supplemental materials relate to a different decision by a different federal agency. Absent an exception, review of an agency decision under the APA is limited the administrative record in existence at the time of the agency decision, not some new record made initially in the court on appeal.[22] "Parties may not use post-decision information as a new rationalization either for sustaining or attacking the Agency's decision."[23] As the Secretary has correctly noted, the Ninth Circuit has recognized but four circumstances in which the court may consider post-decisional documents: (1) if necessary to determine whether the agency has considered all relevant factors and explained the decision; (2) when the agency has relied on documents not on the record; (3) when necessary to explain technical terms or complex

---

[18] Docket 23-2.

[19] Docket 23-3.

[20] Docket 23-4.

[21] Docket 23-5.

[22] *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

[23] *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006) (internal quotation marks and citation omitted).

subject matter; or (4) there is a showing of bad faith by the agency.[24]  In deferring ruling on the motion to supplement, this Court held that the Stacy Exhibits would be disregarded unless the Court found bad faith on the part of the Secretary.[25]

The decision to expand the record is within the broad discretion of this Court.[26] Plaintiffs bear the heavy burden of showing "bad faith" on the part of the Agency.[27] Furthermore, the Ninth Circuit has limited the enumerated exceptions to identify and plug holes in the record.[28]  Plaintiffs have failed to show any such gaps or holes.  In their opening brief Plaintiffs discuss the effect of "Stacey Exhibits" and the Pelham declaration if they are considered.[29]  However, with respect to the "bad faith" argument, Plaintiffs simply rely on the prior arguments presented.[30]

In their motion to augment at Docket 21 Plaintiffs rely on *dicta* in *Overton Park*[31] to establish bad faith.  Unfortunately, unlike the situation in *Overton Park*, in which the record

---

[24] *San Luis & Delta-Mendoza Water Auth.*, 747 F.3d at 601 (9th Cir. 2014) (quoting *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *Sw. Ctr. for Biological Diversity v. U.S. Forest Service*, 100 F.3d 443, 1447 (9th Cir. 1996).

[25] Dockets 44, 49.

[26] *See Fence Creek Cattle Co.*, 602 F.3d at 1131.

[27] *Id.*

[28] *Id*.

[29] Docket 54, pp. 44–53.

[30] Referring to Dockets 21 (Plaintiffs Memorandum in Support of Plaintiffs' Motion to Augment the Administrative Record), 31 (Defendants' Motion for Partial Reconsideration of the Court's December 16, 2013 Order Granting Plaintiffs' Motion to Augment), 37 (Reply in Support of Plaintiffs' Motion to Augment the Administrative Record).

[31] *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402 (1971).

before the agency was incomplete, the record before the Secretary in reaching her decision in this case is, in fact, complete. In their reply at Docket 37 Plaintiffs argue that the inconsistency between the decision reached in this case and the decision of the Forest Service establish bad faith. Omitted from their argument is the citation to any authority that supports the proposition that a *later* inconsistent decision by a *different* government agency necessarily renders the first as having been decided in bad faith. Nor has independent research by this Court uncovered any such authority. Indeed, the Ninth Circuit has indicated that, even inconsistent decisions by the *same* agency would not necessarily demonstrate bad faith in a specific later case.[32] How the reverse, i.e., a later inconsistent decision by a *different* agency, would demonstrate bad faith in an earlier decision, is inexplicable. Accordingly, except to the extent permitted herein above, the request to augment the record at **Docket 21** is **DENIED**.

**B.** *Merits*

**1. Prima Facie Case**.

Plaintiffs argue that the contest proceedings should have been dismissed for a failure to present a prima facie case. Plaintiffs contend that: (1) the contest proceeding should have been dismissed because the minerals examiner's testimony contradicted the mineral report; (2) an incorrect application of the *McClarty* factors; and (3) the common occurrence of graywacke is an improper basis for comparison with Spencer Stone. The Secretary disagreed, holding:

---

[32] *See Fence Creek Cattle Co.*, 602 F.3d at 1131.

Judge Sweitzer correctly ruled that the Government had presented a prima facie case that the Spencer stone, or graywacke, is common variety stone. The Mineral Report concluded that graywacke is common variety rock and not subject to location under the mining laws based upon a number of factors, "including that graywacke is extremely common and widespread, that a number of other common variety rock types may meet engineering specifications for armor stone and riprap, and that Spencer Stone does not command a higher price in the market place than other common varieties used for armor stone." (ALJ Decision at 11; Ex. 1 at 2, 47-50.) Baer also testified that appellants had not identified the discovery of any other stone, such as decorative boulders, before or during his field examination of these claims. (Tr. 84.) Judge Sweitzer accordingly ruled: "This evidence from a Government examiner, who has had sufficient training and experience to qualify as an expert witness, establishes a prima facie case of the claim's invalidity." (ALJ Decision at 16, citing <u>United States v. Gillette</u>, 104 IBLA 269, 274-75 (1988), and <u>United States v. Mansfield</u>, 35 IBLA 95, 96-99 (1978).) On these facts, Judge Sweitzer could hardly have ruled other than that the Government had established a prima facie case that appellants' stone was common variety, whether in blocks (i.e., armor stone) or as boulders. Accordingly, the burden then shifted to appellants to demonstrate by a preponderance of the evidence that their deposit is uncommon variety and locatable under the mining laws. <u>LeFaivre</u>, 138 IBLA at 68.[33]

The concurrence noted:

Judge Sweitzer correctly ruled that the Government had presented a prima facie case that the Spencer Stone, or graywacke, was common variety. In his mineral report, Baer concluded that graywacke rock is common variety rock and not subject to location under the mining laws. (Ex. 1 at 2.) His conclusion was based upon a number of factors, "including that graywacke is extremely common and widespread, that a number of other common variety rock types may meet engineering specifications for armor stone and riprap, and that Spencer Stone does not command a higher price in the market place than other common varieties used for armor stone." (Decision at 11; Ex. 1 at 47-50.)[19/] He concluded that the Spencer Stone "doe [sic] not have any unique intrinsic property that gives it a distinct or special value and is therefore a common variety mineral which is not locatable." (Decision at 16.) Judge Sweitzer ruled: "This evidence from a Government examiner, who has had sufficient training and experience to qualify as an expert witness, establishes a prima facie case of the claim's

---

[33] 171 IBLA at 175.

validity."  Id., citing United States v. Gillette, 104 IBLA 269, 274-75 (1988); United States v. Mansfield, 35 IBLA 95, 96-99 (1978). [20/]

[19/]  Judge Sweitzer noted that, during rebuttal, expert testimony from two employees of the Alaska District Corps of Engineers (ADCE) supported Baer's conclusion that graywacke or Spencer Stone was common variety rock, testifying that "there are many sources for armor stone meeting the USACE's minimum specifications and the Spencer Stone derives no distinct and special value from any attributes that exceed those specifications or from the large size of the rocks that the deposit is capable of producing (see, e.g., Tr. 1061-68, 1081-82)."  (Decision at 11.)

[20/]  This ruling is consistent with the rule, followed by the Board, that the threshold burden on the Government to go forward is limited.  See United States v. Dresselhaus, 81 IBLA 252, 257 (1984).  The Government need only show that the mineral deposit does not possess a unique property giving it a distinct and special value to meet its burden.  Contestees contend that there was no basis for Judge Sweitzer's conclusion that the Government had presented a prima facie case, given that Baer failed to present evidence "comparing the price of Spencer stone to the price of stone typically put to a common variety use * * *." (SOR at 13.)  This contention is clearly erroneous, given that the Government showed that the Spencer stone "was used for armor stone, toe stone, filter stone, ballast, and other rip rap, in other words, common variety uses."  (Answer at 6.)  As the Government points out, "Stacey himself confirmed that he paid the same royalty price for the rock regardless of the rock's ultimate usage" (Tr. 810), that "the contractor, Spencer Rock Products, paid him one price for the rock, regardless of the size of the blasted pieces or the use to which they were to be put" (Tr. 811), and that "the Spencer quarry rock did not command a higher [price] in the marketplace" (Tr. 94, 95).[34]

Initially, this Court notes that Plaintiffs have not cited any authority for the proposition that the decision of the Secretary must specifically address all issues or points raised by a party in a mineral location contest proceeding.  Nor has independent research by this Court discovered any such authority.  Indeed, controlling authority is to the contrary.[35]  Plaintiffs' somewhat cursory argument on this point fails to demonstrate how

---

[34] 171 IBLA at 192–93 (Roberts, ALJ, concurring).

[35] See INS v. Bagamasbad, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); Simeonov v. Ashcroft, 371 F.3d 532, 538 (9th Cir. 2004) (quoting Bagamasbad).

and to what extent those points were sufficiently relevant or necessary to the decision the Secretary rendered in this case.

To the extent that Plaintiffs contend that the Secretary did not apply the *McClarty* factors in finding a prima facie case, the Court agrees with the Secretary that the case Plaintiffs rely upon, *Pitkin Iron Corp. v. Kempthorne*,[36] is neither controlling nor persuasive. The court in *Pitkin Iron* specifically declined to reach *McClarty*, instead it addressed the decision of the IBLA under a three-prong test: (1) the mineral material question is sand, stone, gravel, pumice, pumicite, or cinders; (2) the material's price is similar to that paid for such material typically put to common variety use; and (3) the government's witnesses have been unable to identify any special use for the mineral material that would justify commanding a price higher than the price paid for the common variety.[37]

Plaintiffs also rely in significant part on perceived discrepancies between the Mineral Report and the testimony of the geologist who prepared it with respect to the nature of the stone in question to which the comparison should have been made: armor stone or any other stone. Even accepting on its face Plaintiffs' analysis of the alleged discrepancies does not produce the result Plaintiffs seek. That is not the issue before this Court. The issue before this Court is the decision of the Secretary, which on its face meets the requirements of a prima facie case.

---

[36] 554 F. Supp.2d 1208 (D. Colo. 2008).

[37] *Id.* at 1212 (citing and applying *United States v. LaFaivre*, 130 IBLA 60 (1997) and *United States v. Multiple Use, Inc.*, 120 IBLA 63 (1991)).

Plaintiffs' argument that the common occurrence of graywacke is an improper basis for comparison with Spencer Stone falls far short. First, as noted above, the *McClarty*/CFR factors are inapposite in the context of establishing a prima facie case. Second, Plaintiffs' reliance on their excerpt from *Multiple Use*, in addition being partial and out of context, is misplaced. In context, that footnote follows the sentence that reads: "The comparison must be with other deposits generally." Also omitted from the quotation are the first three sentences in the footnote: "Congress had good cause for designating pumice as a common variety mineral. Pumice deposits can be found in almost all western states and are found in many places in Arizona and its surrounding sites. It should be obvious, therefore, that the further afield one must go to find a comparable deposit the more unusual the particular deposit must be."[38] Plaintiffs' quoted excerpt immediately follows that part of the statement. In short, taken in its entirety and in context the quoted excerpt does not support Plaintiffs' position.

## 2. Comparison of Spencer Stone to Other Stone.

Plaintiffs contend that Spencer Stone has distinct, unique qualities giving it special value in the market. In her decision the Secretary noted:

> Rather than deciding whether the ability to produce large armor stone or this deposit's high yield of large armor stone is "unique," Judge Sweitzer focused on the third Departmental guideline, 43 CFR 3830.12(b)(3), stating that even assuming these are unique properties, appellants failed to show that they imparted a distinct and special value to their deposit. (ALJ Decision at 32, 33.) Also assuming, as did Judge Sweitzer, that these properties render appellants' deposit unique, we proceed similarly to determine whether these properties impart a distinct and special value to appellants' deposit that

---

[38] *Multiple Use*, 120 IBLA at 77, n.12.

is reflected either by higher prices which their large armor stone commands in the market place or by reduced cost of production resulting in substantially greater profits to the appellants.[39]

Plaintiffs argue that in rendering her decision the Secretary: (1) improperly compared Spencer Stone to other deposits of armor stone, instead of comparing it to common varieties; (2) the deposit comparison and findings on market price are not supported by substantial evidence; (3) precedent that geographic location is a permissible criterion in determining market value is arbitrary; (4) the finding that distinct and reduced value due to reduced overhead are not supported by substantial evidence; and (5) the finding of marketability of Spencer Stone was unsupported by the evidence.

At the outset this Court reiterates the underlying principle regarding the burden of proof, i.e., that, once the agency has established a prima facie case, the burden of proof to establish the validity of a mining claim shifts to the claimants.[40] The Secretary's decision recognized this principle.[41] Plaintiffs have failed to meet their burden.

## Comparison Test

The Secretary held:

The parties agree that appellants' rock has been and can be used as armor stone. Appellants contend, however, that Judge Sweitzer misapplied the first Departmental guideline, 43 CFR 3830.12(b)(1), by comparing their deposit to other armor stone quarries, rather than to stone quarries generally. (SOR at 18-22.)

---

[39] 171 IBLA at 180.

[40] See *Rodgers v. Watt*, 726 F.2d 1376, 1380 (9th Cir. 1984); *Humboldt Placer Mining Co. v. Secretary of Dept. of Interior*, 549 F.2d 622, 624 (9th Cir. 1977); *United States v. Springer*, 491 F.2d 239, 242 (9th Cir. 1974).

[41] 171 IBLA 175; 171 IBLA 193 (Roberts, ALJ concurring).

Judge Sweitzer considered "a key issue in determining whether the armor stone is common or uncommon variety is whether the [appellants'] deposit should be compared to similar deposits of stone or common variety deposits of stone generally." (ALJ Decision at 29.) Relying upon United States v. Kaycee Bentonite Corp., 64 IBLA 183, 89 I.D. 262 (1982), he determined that "Spencer stone should be compared to similar deposits of stone rather than common variety deposits generally * * *." (ALJ Decision at 32.)[42]

Plaintiffs contend that the Secretary erred in comparing Spencer Stone to other varieties of armor stone instead of common variety materials. Plaintiffs' argument on this point in their Opening Brief is somewhat confusing, i.e., it is unclear whether Plaintiffs are arguing that the proper comparison is between common variety stone or other armor stone.[43] In their Reply Brief, however, Plaintiffs make clear their position is that the error

---

[42] 171 IBLA 177.

[43] For example, Plaintiffs argue "[i]f a unique property is recognized for the subject deposit, then the comparison test to the McClarty factors is to other uses of mineral material which lack the unique property." In the next breath, however, Plaintiffs contend:
        [. . . .] Therefore, the first McClarty test should be a comparison of Spencer stone used as "large armor stone," meaning material weighing more than two tons, versus other rock materials not applied to such use.[53] Also, the Spencer quarry should be compared with other quarries in terms of yield of armor stone generally. Thus the McClarty comparison should be to other uses of rock material that are not large armor stone and quarries that do not generate a high yield of large armor stone.
        Notwithstanding the IBLA's recognition that Spencer stone possess unique properties, it nonetheless affirmed the ALJ's decision that the deposit comparison with similar deposits of armor stone rather than common variety materials. [. . . .]
[53]    The Board found "the parties understood and generally agreed that armor stone varies by size: large armor stones weigh over 2 tons . . . ." The heart of Plaintiffs' position on this point appears to be:
        The ALJ's analysis which the IBLA sustained disregards the Board's precedent that the presence or absence of a unique property is the proper basis for differential application of the first McClarty factor between similar
                                                                (continued...)

is that Secretary erred in comparing Spencer Stone to other varieties of armor stone, i.e., that the proper comparison should be to common varieties of stone.[44]

Plaintiffs position appears to rest on a perceived inconsistencies among various decisions on this point by the Secretary rendering the decision in this case arbitrary and capricious. Suffice it to say that, while there may be some modicum of merit to Plaintiffs' argument, as the Secretary points out, the comparison test utilized in this case, to other armor stone, is consistent with the decisions of the Ninth Circuit,[45] by which this Court is bound.[46] Whether or not there may exist inconsistencies in various decisions rendered by the Secretary, the application of the law of this circuit as in this case cannot be deemed arbitrary, capricious, or not supported by substantial evidence, or contrary to law.

Finally, on this point, Plaintiffs argue that the Secretary's comparison of the Spencer Glacier quarry with other quarries was deficient and unsupported by substantial evidence: specifically that the evidence does not support a finding that the stone produced from the Spencer quarry is comparable to the stone produced from other quarries. The Court disagrees.

---

[43] (...continued)
deposits versus common varieties generally. Accordingly, the Board's disregard of its precedential authority without reasoned explanation amounts to arbitrary and capricious agency decision-making as a matter of law.
Opening Brief, Docket 54 at 18-20 (citations omitted).

[44] Reply Brief, Docket 59 at 5–8.

[45] *See, e.g., Boyle v. Morton*, 519 F.2d 551, 552 (9th Cir. 1991) (citing *Brubaker v. Morton*, 500 F.2d 200, 202 (9th Cir. 1974) (applying the predecessor to § 3830.12(b), § 3711.1(b)).

[46] *See Miller v. Gammie*, 335 F.3d 889, 900 (2003) (en banc).

Appellants countered in their rebuttal case that virtually no other quarry could produce acceptable armor stone because each had "fatal flaws." [8/] (Ex. B, Table 2-4; Tr. 774-75, 784, 818-19.) On appeal, appellants assert that stone meeting USACE specifications for armor stone is "<u>limited and rare</u>" (SOR at 18), but this assertion is not supported by the record. Many of the same "fatally flawed" quarries identified by Stacey were shown to produce armor stone acceptable to USACE. (Ex. 1, Att. 20; Tr. 92-93, 341-47, 1081-82.) Moreover, Judge Sweitzer noted that "rock from eight other Alaskan quarries meet all of the USACE specifications * * *.  Mr. Baer presented data showing that rock from 12 of the quarries for which Stacey lacked information or a 'fatal flaw' was identified actually was determined by the USACE to be suitable for armor stone or had been successfully used as armor stone * * * (compare Ex. K, Table 2 with Ex. 1, Att. 20; see also Tr. 820-21, 930-31)." (ALJ Decision at 31.)  In fact, Kenneth J. Eissis (USACE), testified that the Corps of Engineers "only rarely adjusts ADCE's standard specifications for armor rock to allow for use of a local rock because there usually is no problem finding a source of rock which will meet the <u>specifications (Tr. 1087-89, 1110-11</u>)." (ALJ Decision at 31.)

---

[8/] The principal "fatal flaw" identified by appellants involved petrographic test results involving microscopic analysis to identify minute rock flaws. (Tr. 782; Ex. B, Att. 8 at 3-4.) Government experts testified that the most important specification for armor stone is size and that other specifications, including petrographic test results, could be adjusted depending on armor stone availability. (Tr. 1061, 1086-88, 1110-11.) Judge Sweitzer noted that, during rebuttal, expert testimony from two employees of the Alaska District Corps of Engineers (ADCE) supported Baer's conclusion that graywacke or Spencer stone was common variety rock, testifying that "there are many sources for armor stone meeting the USACE's [U.S. Army Corps of Engineers'] minimum specifications and the Spencer Stone derives no distinct and special value from any attributes that exceed those specifications or from the large size of the rocks that the deposit is capable of producing (<u>see</u>, <u>e.g.</u>, Tr. 1061-68, 1081-82)."  (ALJ Decision at 11.)

---

Whether a particular deposit is uncommon variety under the first element of the Departmental guidelines requires a comparison of claimant's deposit "with other deposits of such mineral generally."  43 CFR 3830.12(b)(1).  Judge Sweitzer compared appellants' deposit of graywacke, which had been used as armor stone, with other armor stone deposits, as well as with other graywacke deposits.  (ALJ Decision at 32.)  Appellants contended in their rebuttal case and argue on appeal that these comparisons were improper because they were not to ordinary, common variety stone deposits.  We find no error in Judge Sweitzer's rejecting appellants' proffered comparisons and comparing their deposit with other armor stone deposits.  <u>See</u> <u>United States v. Pitkin Iron Corp.</u>, 170 IBLA 352, 388-89 (2006); <u>Knipe</u>, 170 IBLA at 178-79.  Moreover and in any event, we find the Government

demonstrated that rock used as armor stone is common variety building stone by showing that many types of stone are usable as armor stone (e.g., graywacke, basalt, granite, quartzite, and gneiss) and that a large number of quarries (20+) produce rock acceptable for use as armor stone in Alaska.[47]

As stated by the concurrence:

> In fact, Gregory A. Beischer, contestees' expert, a certified professional geologist with 15 years of experience in construction material deposits (Tr. 856-57), testified that "lots of quarries can produce two-ton stones" (Tr. 906-07). Beischer and Baer "identified in exhibit tables approximately 3 dozen quarries in Alaska that produce armor stone (Ex. 1, Att. 20; Ex. K. Table 2)." (Decision at 30.) Moreover, "11 out of the 34 Alaskan armor stone quarries for which a rock type was identified by Mr. Beischer or Mr. Baer produce graywacke rock (see Ex. K, Table 2; Ex. 1, Att. 20)." Id. Judge Sweitzer observed that this data belies Beischer's "testimony that it is fairly uncommon to use graywacke as armor stone (Tr. 822-23, 87)." Id. He summarized the evidence on the nature and use of graywacke as follows:

> > That data also shows that the rock from the other six listed Alaskan graywacke quarries is generally similar to the Spencer Stone. The rock from two of them, like the Spencer Stone, meets all the USACE's typical specifications for armor stone (Ex. K, Table 2). Three more meet all of the specifications tests but have unspecified "petrographic problem(s)" or "access/workability problems," according to a table prepared by Mr. Stacey and copied by Mr. Beischer (Ex. B, Table 2-4; Ex. K, Table 2; Ex. K, Table 2; Tr. 817-19, 899, 907-08). Mr. Baer gathered data showing that the rock from the two quarries with alleged petrographic problems (Rocky Point and Crown Point) was found suitable for armor stone by the USACE (Ex. 1, Att. 20). Only one of the six failed to meet a typical USACE specification.

> Id. at 31. Again, Judge Sweitzer concluded that this data supported the conclusion that graywacke from the PR 16 claim is similar to other graywacke, common in both southern Alaska and worldwide. He added that

---

[47] 171 IBLA at 178–79.

"there is little other evidence comparing the Spencer Stone to other graywacke." Id.; United States v. Knipe, 170 IBLA 161, 165 (2006).[48]

The problem underlying Plaintiffs' position is that it attempts to shift the burden of proof to the Government. The proper standard is whether Plaintiffs established by a preponderance of the evidence that the Spencer Stone was *not* similar to other graywacke, commonly available. Even accepting at face value their contentions and the evidence they rely upon, Plaintiffs have demonstrably failed to establish by a preponderance of the evidence that the Spencer Stone at issue was substantially dissimilar.

### Distinct/Special Value

With respect to Plaintiffs' argument that the Spencer Stone had a distinct and special value, the Secretary found:

> Considering whether appellants' large armor stone commands a higher price in the market, 43 CFR 3830.12(b)(5), the record shows that the government (e.g., ADCE) typically pays more for large armor stone than smaller stone, inclusive of transportation, handling, and placement costs. (Ex. I at 4; Tr. 393; Ex. B, Att. 8.) Judge Sweitzer held that general testimony concerning higher prices paid by the government was insufficient to establish distinct and special value because those prices might be attributable to higher quarrying, transportation, and placement costs. (ALJ Decision at 33.) [10/] Based upon our review of the record, we agree with Judge Sweitzer that appellants failed to demonstrate that their large armor stone commands a higher price in the market place than smaller, common variety armor stone.
> 
> [10/] The record, however, suggests that appellants' cost to quarry, transport, and place armor stone is the same or similar for all sizes of armor stone they produce: quarrying costs for large stone appear to be less than or comparable to the quarrying costs for smaller stone (Tr. 403, 811-12, 972-73); transportation costs for the same rock from the same quarry should be the same regardless of stone size (Ex. B, Item 8, Government Specifications at 2); and the cost to place large armor stone may be less. (Ex. B, Item 8, Project Specifications at 7; Tr. 896.) Of these,

---

[48] 171 IBLA at 195–96 (Roberts, ALJ, concurring).

only potentially lower quarrying costs for the production of large armor stone would be intrinsic to appellants' deposit. See discussion, infra.

    The record includes information on the prices paid appellants for their large armor stone and for their other, smaller stone, but is limited to only two projects where their stone was used:

> Whittier (1991) - Appellants provided more than 750 tons of medium armor stone (1,600-4,000 pounds per stone), nearly 750 tons of large armor stone (over 2 tons per stone), and almost 200 tons of quarry spalls (i.e., stone chips) to Strand, Inc., for the repair of the Delong Dock under Strand's contract with the Corps of Engineers. (Ex. B, Item 7.) Although armor stone and spalls were separately identified on Strand's invoice and while differently sized stone was required for this project, appellants received one unit price ($54.80 per ton) for their large armor stone, medium armor stone, and quarry spalls. Id.
>
> Homer Spit (1996) - Appellants provided stone for the repair of the Homer Spit under Nugget Construction's contract with the Corps of Engineers. Nugget's successful bid identified that large armor stone was priced nearly 20% less than considerably smaller filter stone (less than 400 pounds per stone). (Ex. B, Item 8, Bidding Abstract.)

Since appellants' own evidence indicates that large armor stone was sold for no more than their smaller, common variety stone (i.e., medium armor stone, filter stone, and quarry spalls), see also Tr. 94, 95, 810, 811, we find that they clearly failed to demonstrate that their large armor stone commands a higher price in the market place.[49]

With respect to profitability, the Secretary further noted that:

> Assuming that appellants' deposit is unique in its ability to produce a high yield of large armor stone, as did Judge Sweitzer, we agree with his conclusion that high yield, standing alone, is insufficient to impart a distinct and special value to this deposit. (ALJ Decision at 32.)  High yield can reduce production costs and may result in increased profits. See e.g., United States v. McClarty, 17 IBLA at 45.  Nonetheless, to demonstrate that high yield is a unique, intrinsic property that imparts a distinct and special value to this deposit, it was appellants' burden to establish (not merely assert or assume) that high yield reduced their production costs and that these reduced costs resulted in substantially increased profits. [11/]  Moreover, any such unique property must also be intrinsic to the deposit. See e.g., Knipe,

---

[49] 171 IBLA at 180–81.

170 IBLA at 165 ("the linchpin of profitability must be some intrinsic property of the mineral deposit"). [12/]

[11/] Judge Sweitzer held that appellants "failed to show the difference, if any, between the costs of mining armor stone from the Spencer quarry and the costs of other quarries." (ALJ Decision at 32.) Even if appellants had demonstrated that they were the low cost producer of large armor stone, this still would have been insufficient to establish that high yield imparts a distinct and special value to this deposit. Whatever cost advantage appellants may have is wholly irrelevant unless they show that their resulting profits are substantially higher than those for other large armor stone quarries.

[12/] In this vein and as to profits generally, we note that appellants suffered a net loss from selling 14,275 tons of rock in 1991, including 1,500 tons of armor stone for the Whittier Project (Ex. 1, Conf. App. 6), suggesting that the large armor stone market may not be particularly profitable (if it is profitable at all).[50]

Plaintiffs challenge the finding regarding the number of quarries that can produce an acceptable yield of large armor stone, i.e., stone weighing more than two tons. The Secretary found:

> The record indicates that rock suitable for use as armor stone is ubiquitous and that, while a large number of quarries (20+) can produce armor stone, only three have an "acceptable" yield of large armor stone. (Tr. 890-93, 907, 939; Ex. K at 6, 9; Ex. J.) [13/] Each of these three quarries is roughly 600 miles from the others (Ex. J at 2), and appellants introduced evidence that their quarry's market area is relatively large due to its proximity to low cost rail and water transportation systems (Ex. K at 9; Tr. 878-80). Since the market areas for each of these quarries tend not to overlap and since proximity between a quarry and the location where its rock will be used "is what really counts" (ALJ Decision at 32, quoting Tr. 879), each quarry effectively dominates a limited market area for its large armor stone: Nome Quarry (Western Alaska); Dome Quarry (the Alaskan Peninsula); and Appellants' Quarry (South-central Alaska). See Ex. J at 2. See also Tr. 880, 900-01, 922, 925, 974, 975, 978, 992. [14/]

[13/] Since the costs for an engineered marine structure are driven largely by the cost to acquire and transport armor stone (Tr. 94, 812-13) and since a project does not go forward if its costs exceed anticipated benefits (Tr. 928-30), it may be that lower yield quarries with higher production costs simply do not compete in the rather limited market for large armor stone.

---

[50] 171 IBLA at 181–82.

Based upon these geographically-based market areas and the limited market for large armor stone in Alaska, see discussion infra, it would appear that any reduced costs to produce large armor stone would logically and more likely result in a quarry expanding its market area than substantially increasing profits.

Judge Sweitzer discussed the "criticality of location," finding it significant that contestees' own witness, Beischer, testified that

> the closest quarry to a breakwater project is generally used and that it is "smart" to design a breakwater to use a local armor stone source if possible (Tr. 880, 900-01; see also Tr. 992). This is so because armor stone is the most expensive part of a breakwater project and that the farther the source of suitable armor stone, the more likely a project will not go forward because the costs will outweigh the benefits (Tr. 928-29; see also Tr. 972-73). This fact highlights the importance of an armor stone quarry's location. [Footnote omitted.]

(ALJ Decision at 32.) Appellants' other witnesses, Orson Pratt Smith III and Dennis Nottingham, likewise emphasized "the importance of location and the availability of transportation modes that minimize handling of the rock or other transportation cost factors (see, e.g., Tr. 922, 925, 974, 976, 978; Ex. 1, p. 3; Ex. K, p. 9)." (ALJ Decision at 32.)

In addition and in consideration of the relatively few projects likely to require large armor stone (Tr. 415, 980, 989, 1062, 1066-70), Judge Sweitzer noted:

> [I]t is not at all clear that there is a market for any large armor stone produced by the Spencer Quarry. Generally, a quarry's market extends only several hundred miles (Tr. 924-25). Given the transportation costs, Mr. Beischer identified the market for Spencer Stone as being south-central Alaska, extending anywhere along the Alaska Railway line, to the Kenai Peninsula, out into the Cook Inlet to Kodiak and beyond, and across Prince William Sound (Tr. 879). Mr. Nottingham, whose company works on 75% of the marine projects in Alaska, could identify only one small project in south-central Alaska that will definitely need armor rock in the future and that project does not require large armor stone (Tr. 980-82, 1062, 1064-65).
>
> He mentioned several other possible projects, but those projects were either on hold or in the planning stages with feasibility still to be determined (id.). Further, Mr. Eissis credibly testified that none of those projects would require rock over 2 tons (Tr. 1062, 1064-65), and Mr. Nottingham confirmed that the maximum rock size for a good portion of those projects is 2 tons (Tr. 989). Mr. Eissis did identify four projects which

required large armor stone, but three were already completed (Tr. 1068-70). The fourth is the Nome harbor project, which will require large armor stone in the future to complete an expansion phase (id.) but Mr. Beischer testified that project is outside the Spencer Quarry's market area and that the quarry could not compete with the Nome Quarry for that project (Tr. 821).

(ALJ Decision at 33.) Based upon our review of the record, appellants simply failed to demonstrate that high yield imparted a distinct and special value to this stone deposit which was reflected in lower costs that substantially increased their profits. Before concluding our consideration of armor stone, we emphasize that a deposit's special and distinct value must be based upon an intrinsic, unique property (not an extrinsic factor) and that location is clearly an extrinsic consideration. See e.g., Knipe, 170 IBLA at 165-66; United States v. Foley, 142 IBLA at 188 ("Price affected by proximity, however, can never be used to evaluate the intrinsic quality of mineral in an uncommon variety determination"); United States v. Henri (On Judicial Remand), 104 IBLA 93, 99 (1994), aff'd, Henri v. Lujan, No. A90-237 (D. Alaska July 31, 1993), appeal dismissed, No. 93-35102 (9th Cir. Aug. 25, 1993). Since neither higher prices nor reduced costs resulting in increased profits were established by appellants, we conclude that they failed to carry their burden of establishing that their deposit has a unique property for use as armor stone which imparts a distinct and special value to that deposit under either the Departmental guidelines or the McClarty test. [15/]

[15/] We note in passing that even if higher prices or reduced costs and increased profits had been established, they must also be attributable to an intrinsic property and not be a function of the deposit's favorable location or other extrinsic factor.[51]

The concurrence noted:

Moreover, Judge Sweitzer rejected appellants' contention that the ability to produce large armor stone results in reduced production costs so that the stone receives a higher price in the marketplace, rendering the stone an uncommon variety. The record supports his reasoning that such reduced costs must be considered against the fact that availability of the armor stone is widespread; that much of the cost of using large armor stone is in transporting and not producing it; and that the financial realities of whether a project will be undertaken depends upon proximity of a stone source. In sum, the record is clear that there is next to no market for large armor stone. See Decision at 32-33.

[51] 171 IBLA at 182–84.

Judge Sweitzer assumed, arguendo, that the cost of mining large armor stone is reduced, but he demonstrated, nevertheless, through the testimony of Eissis and Jerome Raychel of ADCE, that "there are many sources for armor stone meeting the USACE's minimum specifications and the Spencer Stone derives no distinct and special value from any attributes that exceed those specifications or from the large size of the rocks that the deposit is capable of producing (see, e.g., Tr. 1061-68, 1081-82)." (Decision at 11.) As observed by counsel for the USFS: "What appellants have tried to argue throughout this case is that the Spencer graywacke is good stone, that it is well-suited for armor stone. This much is true. It is good stone. It is not however, uncommon." (Opposition of Appellants' Appeal at 14, citing United States v. Verdugo & Miller, 37 IBLA at 280.)

As discussed, once the Government met its threshold burden of presenting a prima facie case with respect to the common variety nature of graywacke or Spencer Stone, the burden then shifted to the contestees to overcome this showing by a preponderance of the evidence. As noted in United States v. LeFaivre, "it is the mining claimant who is the actual proponent of the rule that the claim is valid, and, therefore, it is the mining claimant who bears the ultimate burden of persuasion (burden of proof)." 138 IBLA at 67, citing United States v. Knoblock, 131 IBLA at 81, 101 I.D. at 140-41, and cases cited. The contestees "completely failed to overcome BLM's prima facie case," LeFaivre, 138 IBLA at 68, regarding both armor stone and decorative boulders.[52]

While this Court agrees that, as Plaintiffs argue, there is contrary evidence in the record, Plaintiffs' arguments are for the most part predicated upon the erroneous assumption that the government did not bear its burden of proof. Quite to the contrary, as noted above, once the government established a prima facie case, as proponents, Plaintiffs bore the burden of proof by a preponderance of the evidence on all the elements of a locatable mining claim to the extent they were addressed by the Secretary. This Court

---

[52] 171 IBLA at 199 (Roberts, ALJ, concurring).

cannot say that the Secretary erred in determining that Plaintiffs had failed to meet their burden.[53]

## V. CONCLUSION/ORDER

Based upon the record before it and applying the proper standard of review and burden of proof, the Court finds that Plaintiffs have failed to show that the Decision of the Secretary of the Interior was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, the decision of the Secretary of the Interior in *United States v. J. Dennis Stacey and Pelham L. Jackson*, IBLA 2004-204, 171 IBLA 170 (2007) is hereby **AFFIRMED**.

The Clerk of the Court is directed to enter final judgment accordingly.

**IT IS ORDERED** this 3rd day of March, 2015.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[53] To the extent not expressly addressed in this decision, this Court has considered all other arguments raised by Plaintiffs and finds them to be duplicative, inapposite, or unpersuasive.